NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TERESA D.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 25-17377 (RK)<br><br>**OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court on Teresa D.'s[1] ("Teresa" or "Plaintiff") appeal from the Commissioner of the Social Security Administration's (the "Commissioner") final decision denying Teresa's request for disability insurance benefits. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Local Civil Rule 78.1. For the reasons below, the Court **AFFIRMS** the Commissioner's decision.

## I. BACKGROUND

In this appeal, the Court must answer the following question: Did Administrative Law Judge Peter Lee ("the ALJ" or "Judge Lee") properly analyze, with substantial evidence, Teresa's residual functional capacity under the Social Security Act?

### A. Procedural Posture

On September 20, 2022, Teresa filed an application for a period of disability and disability insurance benefits, alleging an onset date of July 13, 2022. (Administrative Record ("AR") at

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

188.)[2] Teresa was 56 years old as of the alleged onset date and when she filed her application. (*Id.*) The Social Security Administration (the "Administration") denied the requests both initially, (*id.* at 50–57), and on reconsideration, (*id.* at 58–64). Thereafter, Teresa requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 17–25.) On December 2, 2024, Teresa, who was represented by counsel, and Steven Feinstein, a vocational expert ("VE"), testified at a hearing before Judge Lee. (*Id.* at 42–83.) On February 5, 2025, Judge Lee issued a written decision finding Teresa not disabled. (*Id.* at 17–25.) The Administration's Appeals Council denied Teresa's request to review Judge Lee's decision. (*Id.* at 1–6.) This appeal followed. (ECF No. 1.) The Administrative Record was filed on January 8, 2026. (ECF No. 7.) Teresa then filed her moving brief, ("Pl. Br.," ECF No. 8), and the Commissioner filed an opposition, ("Opp.," ECF No. 10).

### B. JUDGE LEE'S DECISION

As stated in his February 5, 2025 decision, Judge Lee held that Teresa was not disabled under the prevailing Administration regulations. (*See generally* AR at 17–25.) To reach this conclusion, Judge Lee analyzed Teresa's application under the five-step process for determining whether an individual is disabled, as set forth in 20 C.F.R. § 404.1520(a). (*See id.*) Teresa disputes Judge Lee's conclusions at Step Four. (*See* Pl. Br. at 22–32.) For the sake of completeness, the Court will summarize each step of Judge Lee's analysis before focusing on the specific portions thereof with which Teresa takes issue.

At Step One, Judge Lee found that Teresa had not engaged in substantial gainful activity since July 13, 2022, the alleged onset date. (AR at 20 (citing 20 C.F.R. § 404.1571 et seq.; AR at 239–66).) At Step Two, Judge Lee found that Teresa suffers from two severe impairments: (1)

[2] The Administrative Record ("Record" or "AR") is docketed at ECF Nos. 7-1 through 7-9. This Opinion will reference only page numbers in the record without the corresponding ECF numbers.

degenerative disc disease with radiculopathy and (2) right hand osteoarthritis. (*Id.* (citing 20 C.F.R. § 404.1520(c)).) Judge Lee concluded that these severe impairments "significantly limit" Teresa's ability to perform basic work activities. (*Id.*) Also at Step Two, Judge Lee found that Teresa has three non-severe impairments: (1) Dupuytren's of the right middle finger,[3] (2) depressive disorder, and (3) anxiety disorder.[4] (*Id.* (citing AR at 313–20, 450–54; 20 C.F.R. § 404.1520a(d)(1)).)

At Step Three, Judge Lee determined that Teresa did not have "an impairment or combination of impairments" that qualifies under the Administration's listed impairments (the "Listings"), set out in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 21 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).) He considered, but found inapplicable, Listing 1.15, "disorders of the skeletal spine resulting in compromise of a nerve root(s)," and Listing 1.16,

---

[3] Dupuytren's "is an abnormal thickening and tightening of the normally loose and flexible tissue beneath the skin of the palm and fingers, . . . causing the fingers to curl forward." *Dupuytren's Disease*, WebMD (Nov. 5, 2022), https://www.webmd.com/a-to-z-guides/dupuytrens-disease-topic-overview.

[4] Although Teresa's appeal concerns only her physical impairments, the Court will briefly summarize Judge Lee's findings regarding Teresa's non-severe depressive and anxiety disorders. Pursuant to 20 C.F.R. § 404.1520a, Judge Lee rated Teresa's degree of limitation in four areas of mental functioning. (AR at 20–21 (citing 20 C.F.R. § 404.1520a(d)(1)).) First, with respect to *understanding, remembering, and applying information*, Judge Lee noted that Teresa reported "no issues managing funds," "no[] need [for] reminders to go places," and "no issues with written or spoken instruction." (*Id.* at 20 (citing AR at 313–20).) At her consultative examination, Teresa "was able to perform serial 7's and simple math calculations" and "did not report any significant memory problems." (*Id.* (citing AR at 450–54).) Second, with respect to *interacting with others*, Judge Lee explained that Teresa reported being able to shop in stores, "has never been fired due to problems getting along with others," and was described by the consultative examiner as "pleasant and cooperative with appropriate eye contact." (*Id.* (citing AR at 313–20, 450–54).) Third, with respect to *concentrating, persisting, and maintaining pace*, Judge Lee acknowledged that Teresa reported difficulty with concentration due to pain, but noted that, at the consultative examination, her thought process was "coherent and goal directed," she was "oriented in all spheres," and her "insight was fair." (*Id.* at 20–21 (citing AR at 313–20, 450–54).) Finally, with respect to *adapting and managing oneself*, Judge Lee explained that Teresa reported she was "able to take care of pets with assistance," "able to handle stress and changes in routine," had "no mental barriers to personal care," and could prepare meals. (*Id.* at 21 (citing AR at 313–20).)

Because Judge Lee found that Teresa's depressive and anxiety disorders "cause no more than 'mild' limitation in any of the functional areas" and "the evidence does not otherwise indicate that there is more than a minimal limitation in [Teresa's] ability to do basic work activities," the ALJ concluded that her mental impairments are non-severe. (*Id.* (citing 20 C.F.R. § 404.1520a(d)(1)).)

"lumbar spinal stenosis resulting in compromise of the cauda equina." (*Id.*) Judge Lee reasoned, *inter alia*, that there was "no evidence that the nerve roots have been compromised in a manner causing radicular symptoms of pain, paresthesia, or muscle fatigue along with signs of muscle weakness and irritation, tension, or compression" as required to satisfy Listing 1.15 and "no indication of spinal stenosis causing neurological compromise with symptoms of pain, sensory loss, or claudication along with signs of muscle weakness and sensory changes or decreased deep tendon reflexes in one or both lower extremities" as required for Listing 1.16. (*Id.*) He further reasoned, with respect to both Listings, that there was "no evidence that the claimant medically requires an assistive device that involves the use of both hands or has an inability to use one upper extremity and requires an assistive device." (*Id.*)

As a precursor to Step Four, Judge Lee concluded, based on "careful consideration of the entire record"—including Teresa's own statements, statements from her son, the objective medical evidence, treatment records, and prior administrative medical findings ("PAMFs")—that Teresa has the residual functional capacity ("RFC") to perform "light" work, *see* 20 C.F.R. § 404.1567(b), but that any job she performs has to be limited in specified ways: Teresa could "[n]ever climb ropes, ladders or scaffolds; never be exposed to unprotected heights or hazardous machinery; occasionally climb stairs and ramps; occasionally crawl; occasionally kneel; occasionally stoop and crouch; frequent reaching, fingering and handling; frequently balance." (AR at 22; *see id.* at 22–24 (citing AR at 50–64, 267–73, 280–87, 313–20, 362–454, 581–699, 716–812).)

As relevant here, in making his RFC determination, Judge Lee found that Teresa's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" but that her "statements concerning the intensity, persistence and limiting effects of

these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 22.) Specifically, Judge Lee explained that Teresa reported pain and work limitations due to "cervical fusion and right hand," namely that she cannot sit for more than 10 minutes, lift heavy objects, or use a keyboard or mouse and has difficulty with personal care. (*Id.* (citing AR at 267–73, 313–20).) He considered Teresa's other statements—that she was able to prepare simple meals, load/unload the dishwasher, drive, shop in stores, and walk for 30 minutes—then undertook a review of the other record evidence, including medical evidence, before concluding that Teresa's symptoms "do not cause the degree of limitation alleged." (*Id.* at 22–24 (citing AR at 50–64, 267–73, 313–20, 362–54, 581–699, 754, 770, 794).)

Judge Lee first considered Teresa's orthopedic treatment records throughout 2022 and 2023, beginning with her February 9, 2022 consultation appointment.[5] (*Id.* at 22–23 (citing AR at 364–412).)[6] Judge Lee noted that, during her appointment, Teresa "complained of pain in the cervical and right upper extremity" and "described throbbing, burning and numbness down the arm." (*Id.* at 22 (citing AR at 364–412); *see id.* at 372.) Her physical examination showed the following: non-antalgic gait,[7] normal heel and toe walk, reduced range of motion in the cervical

[5] As Judge Lee noted, Teresa "reported undergoing carpal tunnel surgery years prior"—around 2016—and the administrative record contains older medical records from 2013–14 and 2017–18. (AR at 23, 372, 455–560.) However, Teresa alleges a disability onset date of July 13, 2022, and the record reflects that she began receiving medical care in connection with her instant complaints about five months prior, on February 9, 2022. (*Id.* at 20, 188, 372.) Judge Lee appears to have focused on the records from the time period relevant to her application for disability benefits, and Teresa takes no issue therewith. (*See generally* AR at 17–25; Pl. Br.); *see also Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004) ("There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record.").

[6] The medical records at Exhibits 1F, 2F, and 3F appear largely duplicative. (*See* AR at 362–63 (Exhibit 1F), 364–412 (Exhibit 2F), 413–49 (Exhibit 3F).) Exhibit 2F contains records from Teresa's orthopedist appointments from February 2022 through February 2023, and Exhibit 3F is a better-quality version of the same treatment records from July 2022 through February 2023. (*Id.* at 364–449.) Exhibit 1F is a duplicate of Teresa's November 2022 EMG results. (*Id.* at 403–04; *see id.* at 362–63, 437, 439.) In other words, Exhibit 2F appears comprehensive, and Exhibits 3F and 4F appear to contain portions thereof.

[7] "An antalgic gait is, generally, a gait abnormality where an individual favors certain motions to avoid

spine, muscle testing that was "generally 5/5 with the exception of 1/4 or 2/4 in the biceps, triceps and brachioradialis reflex," and a positive Spurling's test[8] on the right. (*Id.* at 23; *see id.* at 373.) Teresa's orthopedist recommended spinal imaging. (*See id.* at 374.) Teresa's March 2022 lumbar spine X-ray and cervical spine MRI, as summarized by Judge Lee, showed "mild degenerative arthritis in the facet joints" and "mild disc bulges." (*Id.* at 23; *see id.* at 373, 377, 379.) Teresa in turn "underwent fusion at C4-5 and C5-6" on July 14, 2022. (*Id.* at 23; *see id.* at 386–88 (medical records describing Teresa's "[a]nterior cervical discectomy/decompression and fusion" at discs C4-C5 and C5-C6).) Subsequent imaging of Teresa's cervical spine showed "[p]ost surgical changes at C4-5 and C5-6 without significant central or foraminal stenosis," and "[a]n EMG of the upper extremities revealed right C6 radiculopathy." (*Id.* at 23; *see id.* at 398, 402–05; *see also id.* at 390, 393, 395.)

Judge Lee next considered Teresa's 2023 medical records. He explained that, on January 30, 2023, Teresa "underwent a right C5-C6 transforaminal epidural injection." (*Id.* (citing AR at 413–449); *see id.* at 433–34.) During her post-injection appointment on February 17, 2023, Teresa reported that she did not obtain any relief from the injection and was taking 300 mg of Gabapentin. (*Id.* at 23; *see id.* at 423.) Judge Lee noted that, "[w]hile another injection was recommended, [Teresa] indicated that she was not interested in injections and preferred to treat with pharmacologically, having noted that Gabapentin did help." (*Id.* at 23 (citing AR at 425).) Judge Lee summarized Teresa's physical examination results, which he described as "generally unchanged" from her physical examination a year prior. (*Id.* ("[Teresa's] muscle testing [was]

---

pain." *Lambertson v. Astrue*, 625 F. Supp. 2d 160, 163 n.4 (D. Del. 2009).

[8] "A positive Spurling's test indicates nerve root compression." *Stockett v. Comm'r of Soc. Sec.*, 216 F. Supp. 3d 440, 456 (D.N.J. 2016).

generally at 5/5 with the exception of 1/4 or 2/4 in the biceps, triceps and brachioradialis reflex. Spurling's test was positive on the right and there was pain upon range of motion in the cervical spine. Gait was normal."); *see id.* at 424.) He observed, *inter alia*, that Teresa's gait was again normal, and he further noted that, during Teresa's July 2023 consultative examination a few months later, the examiner described Teresa as having "normal gait, posture and motor behavior." (*Id.* at 23; *see id.* at 451.)

Having reviewed all of Teresa's orthopedic appointment records, which seemingly concluded with her February 2023 appointment, Judge Lee turned to Teresa's 2024 imaging results and physical therapy records. (*Id.* at 23 (citing AR at 581–699, 754, 770, 794).) He considered Teresa's January 24, 2024 cervical spine X-ray, which "documented no hardware failure from the [January 2023] fusion" and "no significant adjacent segment disc degeneration or instability," as well as her February 2, 2024 lumbar spine MRI, which "noted small focal disc protrusion without stenosis at L2-3" and "disc bulging without significant stenosis" at L3-4 and L4-5. (*Id.* (citing AR at 770, 794).) Further, Judge Lee evaluated Teresa's physical therapy records from eleven visits between March and April of 2024. (*Id.* at 23 (citing AR at 581–699); *see id.* at 582.) He acknowledged that Teresa complained of pain ranging from two out of ten to ten out of ten and "reported some improvement, but also noted that when she tried cleaning for a prolonged period of time she was in pain." (*Id.* at 23; *see id.* at 583.) Judge Lee finished his review of Teresa's medical records with a discussion of "[m]ore recent records," including a June 26, 2024 X-ray of Teresa's right hand "which report[ed] mild osteoarthritis." (*Id.* at 23 (citing AR at 754).)

As the final part of formulating Teresa's RFC, Judge Lee accounted for and found persuasive the PAMFs in the record. (*Id.* (citing AR at 50–64).) Therein, both state agency medical

consultants limited Teresa to "[l]ight exertion with limited reaching, handling and fingering." (*Id.*; *see id.* at 55, 62.) Judge Lee found the PAMFs "consistent with the medical evidence noted above" and "consistent with the claimant's activities of daily living," reasoning, *inter alia*, that the consultants "noted cervical injections, positive Spurling on right and right C5/6 sensory dysfunction, but normal gait, heel/toe walk, normal reflexes and 5/5 motor strength" and "noted that the claimant is independent in self-care, shares in cooking, comanaged finances, shops and drives." (*Id.* at 23; *see id.* at 52, 54, 56, 60–61, 63.)

Based on the foregoing, Judge Lee found that Teresa's statements about "the intensity, persistence, and limiting effects of her symptoms" were "inconsistent" with the other record evidence. (*Id.* at 23.) He concluded that, "although the record confirms that she suffers from physical impairments with some resulting limitations in functioning, the record fails to demonstrate that she is precluded from all work" and "the symptoms do not cause the degree of limitation alleged." (*Id.* at 23–24.) Judge Lee accordingly concluded at Step Four that Teresa is capable of performing her past relevant work as an "Order Clerk." (*Id.* at 24 (citing 20 C.F.R. § 404.1565).) He compared Teresa's RFC, *supra*, with "the physical and mental demands of this work" and found Teresa able to perform her past relevant work as an Order Clerk both as she had actually performed it and as it is generally performed. (*Id.*) Having determined that Teresa remained able to perform her past relevant work, Judge Lee concluded that she was not under a disability from her alleged onset date of July 13, 2022 through the date of the decision. (*Id.* (citing 20 C.F.R. 404.1520(f))); *see also* 20 C.F.R. 404.1520(a)(4)(iv) ("At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.").

## II. LEGAL STANDARD

### A. Standard of Review

The Court reviews the "final decision of the Commissioner of Social Security" to determine whether the Commissioner's findings are "supported by substantial evidence." 42 U.S.C. § 405(g). If the Appeals Council denies a claimant's request for review, "the ALJ's decision is the Commissioner's final decision." *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Put differently, "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 633 (3d Cir. 2010) (quoting *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003)). This evidentiary threshold "is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

The scope of the Court's review of the ALJ's decision is "quite limited." *Rutherford*, 399 F.3d at 552. On review, the Court may not "re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari,* 247 F.3d 34, 38 (3d Cir. 2001). The Court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak,* 777 F.3d at 610 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981) (citation

omitted).

### B. ESTABLISHING ELIGIBILITY FOR DISABILITY INSURANCE BENEFITS

A claimant may establish disability under the Social Security Act by proving they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ applies a well-established "five-step sequential evaluation process," which requires considering whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or him past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. § 404.1520(a)–(f)). The claimant bears the burden of proof at the first four steps, at which point it shifts to the Commissioner at Step Five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019).

## III. DISCUSSION

As part of his determination of Teresa's RFC—i.e., "the most [Teresa] can still do despite [her] limitations," 20 C.F.R. § 404.1545(a)(1)—Judge Lee considered Teresa's subjective statements about her symptoms pursuant to 20 C.F.R. § 404.1529. He concluded that, although Teresa's impairments "could reasonably be expected to cause the alleged symptoms," her alleged symptoms "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR at 22.) Ignoring "the reasons explained in [the ALJ's] decision," (*id.*), Teresa first challenges the "conclusory" nature of Judge Lee's determination, (Pl. Br. at 10; *see id.* at 10–11). Then, seemingly recognizing that an ALJ's decision

must be "read as a whole," *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004), Teresa argues that Judge Lee's analysis of the record "does not in any obvious way demonstrate any inconsistency in Plaintiff's description of her symptoms and limitations," (Pl. Br. at 12; *see id.* at 12–13). In short, Teresa challenges Judge Lee's credibility determination as inadequately explained and supported. Because "all other issues have been [forfeited]," the Court restricts its review to these arguments. *Torres v. Kijakazi*, No. 21-18424, 2023 WL 6890851, at *2 n.3 (D.N.J. Oct. 19, 2023) (collecting cases). For the following reasons, neither argument persuades, and the Court finds Judge Lee's decision both substantially supported and properly explained.

In making the RFC determination, the ALJ engages in a two-step assessment of the claimant's reported symptoms. 20 C.F.R. § 404.1529(a), (d)(4). At the first step, not at issue here, the ALJ considers only objective medical evidence (and asks whether such evidence supports the existence of a physical or mental impairment that reasonably explains the symptoms the claimant reports). *Id.* § 404.1529(a)–(b); SSR 16-3p, 2017 WL 5180304, at *3–4 (Oct. 25, 2017). If the first step is satisfied, the ALJ considers "all of the evidence presented," including the claimant's own statements, to determine how the claimant's symptoms limit her ability to work. 20 C.F.R. § 404.1529(c)(3); *see id.* § 404.1529(a), (c)(1); SSR 16-3p, 2017 WL 5180304, at *4–5. The second step entails a credibility determination by the ALJ. Because "[a] claimant's own statements about pain or symptoms are not, by themselves, sufficient to establish that [s]he is disabled," the ALJ "evaluat[es] a claimant's credibility . . . [and] determines whether [her] complained-of symptoms are reasonably 'consistent with the objective medical evidence and other evidence.'" *Cosme v. Comm'r of Soc. Sec.*, 845 F. App'x 128, 133 (3d Cir. 2021) (quoting 20 C.F.R. § 404.1529(a)); *see Dixon v. Comm'r of Soc. Sec.*, 183 F. App'x 248, 252 (3d Cir. 2006) ("[T]he ALJ must determine the extent to which a claimant is accurately stating the degree of pain [or other

symptoms] or the extent to which he or she is disabled by it."); SSR 16-3p, 2017 WL 5180304, at *2. If the ALJ finds the claimant's subjective complaints inconsistent with the record evidence, "he may discount them." *Cosme*, 845 F. App'x at 133 (citing 20 C.F.R. § 404.1529(c)(4)); *see Keveanos v. Berryhill*, No. 18-3421, 2019 WL 1500624, at *11 (D.N.J. Apr. 5, 2019) ("An ALJ may reject, or only partially credit, subjective complaints if they are not credible in light of the other evidence of record." (citing *Schaudeck*, 181 F.3d at 433)).[9]

Reviewing courts "ordinarily defer to an ALJ's credibility determination," *Hock v. Comm'r of Soc. Sec.*, 646 F. App'x 171, 174 (3d Cir. 2016) (quoting *Reefer*, 326 F.3d at 380), particularly "where (as here) the judge solicits the claimant's live testimony," *Iacouzzi v. Comm'r of Soc. Sec.*, No. 20-3017, 2021 WL 5121246, at *2 (3d Cir. Nov. 4, 2021); *see Carmelo R. v. Comm'r of Soc. Sec.*, No. 20-6874, 2022 WL 2358386, at *5 (D.N.J. June 30, 2022) ("To begin with, the bar for substantial evidence is 'not high.' And the bar is even lower when there is a challenge to an ALJ's credibility determination of a live witness." (citation omitted) (quoting *Biestek*, 587 U.S. at 103)). "So long as substantial evidence supports the ALJ's [credibility determination], the Court should afford it 'great deference.' The ALJ's credibility determination has thus been described as 'virtually unreviewable on appeal.'" *Jennifer L. F. v. Bisignano*, No. 25-1126, 2026 WL 2740450,

[9] The Administration's regulations no longer use the term "credibility" because "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2. However, "the overarching task of assessing whether an individual's statements are consistent with other record evidence remains the same," and courts continue to use the term as a helpful shorthand to refer to this inquiry. *See Stelzer v. Comm'r of Soc. Sec.*, No. 18-15, 2019 WL 950165, at *7 n.7 (D.N.J. Feb. 27, 2019) ("This Court employs the term 'credibility' here in the context of whether Plaintiff's statements are supported by other record evidence, rather than with regard to Plaintiff's overall character or truthfulness, which the Court has no reason whatsoever to question."); *Sanchez v. Colvin*, No. 15-5539, 2016 WL 4967764, at *8 n.13 (D.N.J. Sept. 16, 2016) ("[T]he change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." (quoting *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (Posner, J.))); *Cosme*, 845 F. App'x at 133.

at *11 (D.N.J. Sept. 16, 2026) (first quoting *Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 189 (3d Cir. 2007); then quoting *Hoyman v. Colvin*, 606 F. App'x 678, 681 (3d Cir. 2015)).

Judge Lee properly followed this two-step process, and his credibility determination was supported by substantial evidence. Teresa does not challenge Judge Lee's first-step finding that her medically determinable impairments, including degenerative disc disease with radiculopathy, right hand osteoarthritis, and Dupuytren's of the right middle finger, "could reasonably be expected to cause the alleged symptoms." (AR at 20, 22.) She disputes his credibility determination at the second step—that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id.* at 22.)

According to Teresa, Judge Lee inadequately considered her "description of her symptoms and limitations," but she fails to specify within her argument the "symptoms and limitations" that Judge Lee improperly discounted (let alone how they would have changed his analysis). (Pl. Br. at 12); *see K.A. v. Comm'r of Soc. Sec.*, No. 25-2757, 2026 WL 2428223, at *1 (D.N.J. Aug. 19, 2026) ("[O]n appeal, Plaintiff carries twin burdens of proof. First, Plaintiff bears the burden at the first four steps of the analysis of demonstrating how [her] impairments, whether individually or in combination, amount to a qualifying disability. Second, Plaintiff bears the burden of showing not merely that the Commissioner erred, but also that the error was harmful." (citation omitted)). Instead, in her introductory factual recitation, Teresa summarizes her various statements across her Disability and Function Reports and hearing testimony, then seemingly refers to some or all of those statements as the ones not properly considered by the ALJ. (Pl. Br. at 2–3.) At most, she asserts that Judge Lee "d[id] not reasonably describe the 'total limiting effects' of [her] hand impairments," (*id.* at 6), but she appears to describe all of her impairments and limitations as hand-

related, (*id.* at 2).[10] In short, while Teresa contends that Judge Lee's credibility determination is conclusory and insufficiently explained, her brief in support of this appeal suffers from the same perceived errors she attributes to Judge Lee's decision: it consists of "the mere statement of a conclusion, . . . accompanied by a summary of the evidence." (*Id.* at 11 (emphasis omitted).) The claimant bears the ultimate burden of establishing disability, and the reviewing court "must uphold a final agency determination unless [it] find[s] that it is not supported by substantial evidence in the record." *Rutherford*, 399 F.3d at 552 (citing 42 U.S.C. § 405(g)); *see* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1512(a).

Meanwhile, Judge Lee specifically considered Teresa's various statements about her pain and the limitations allegedly caused by her symptoms. As detailed hereinabove, Judge Lee began his credibility determination by considering Teresa's reported symptoms set forth in her Disability Report, Function Report, and hearing testimony. (AR at 22 (citing AR at 267–73, 313–20).) Therein, Teresa stated that she is "limited in her ability to perform work related activity due to

---

[10] Teresa's "statement of the issue" on appeal is that "[t]he ALJ's RFC is in error because it does not reasonably describe the 'total limiting effects' of Plaintiff's hand impairments as demonstrated in the record." (Pl. Br. at 1.) The Commissioner understandably viewed Teresa as "focus[ing] solely on her right hand limitations" and "argu[ing] that the ALJ erred by insufficiently explaining why he did not include greater limitations in Plaintiff's use of her hands." (Opp. at 2 n.1, 6.) His Opposition in turn concerns Teresa's hand-specific statements and responds that the ALJ found "limited clinical evidence related to Plaintiff's hand function" in contrast with Teresa's testimony that she had "no ability to use her dominant right hand, even for manipulating a computer mouse or typing on a keyboard." (*Id.* at 6–7; *see id.* at 7 (explaining that Judge Lee considered that Teresa's "course of treatment . . . was largely focused on her spine," that "examinations did not indicate restriction related to Plaintiff's right hand," that "an X-ray of Plaintiff's right hand revealed only mild osteoarthritis," and that the PAMFs "found no evidence indicating more significant limitations in Plaintiff's right hand use were warranted"), 8 (explaining that "Plaintiff provided little direct evidence of limitation in her hands," that Judge Lee "addressed all of this evidence," that Teresa's Function Report "indicated a baseline level of light right hand use" while she testified to "a complete inability to use the right hand," and that Judge Lee "relied on the only opinion evidence of record [i.e., the PAMFs] to resolve this conflict").)

The Court agrees with the Commissioner's description of the ALJ's reasoning and further agrees that Teresa's appeal, if taken to narrowly concern her right-hand limitations, is without merit. However, in light of Plaintiff's imprecision regarding the statements and symptoms at issue, as well as her suggestion that her spinal pain and hand limitations are intertwined, the Court will explain why Teresa's arguments, even construed more broadly, still fail to warrant remand. *But cf. Torres*, 2023 WL 6890851, at *2 n.3.

'cervical fusion and right hand,'" which led her to stop working on July 13, 2022, her alleged onset date. (*Id.* (citing AR at 267–73).) Judge Lee acknowledged Teresa's statements, on the one hand, that she is "not . . . able to use a keyboard or mouse due to pain," has "difficulty with personal care due to pain," and "cannot sit for more than 10 minutes or lift heavy objects." (*Id.* (citing AR at 313–20); *see id.* at 318 (Teresa's Function Report) ("Due to my neck and hand pain it is difficult for me to do most daily activities. I cannot sit straight up for a long time preventing me from using the computer. Daily chores have become a hassle.").) Judge Lee noted, however, that Teresa also reported that she is "able to prepare simple meals," "able to drive and shop in stores," and "can load/unload the dishwasher," and that she testified during the hearing "she can walk for 30 minutes." (*Id.* (citing AR at 313–20); *see id.* at 314–16 (Teresa stating in her Function Report that she "prepare[s] whatever meal [she] can" on a "daily" basis, "perform[s] light tasks/chores around the house," "place[s] clothes in hamper/washer," "place[s] dishes in dishwasher" when they are brought to her, and shops in stores twice a week "with husband or family assistance").)

Judge Lee thus highlighted inconsistencies in Teresa's own statements, particularly in light of her representations about her daily activities. *See* 20 C.F.R. § 404.1529(c)(3)(i); *Russo v. Astrue*, 421 F. App'x 184, 190 (3d Cir. 2011) (finding that ALJ properly considered claimant's daily activities when partially discrediting subjective accounts of symptom severity). "Inconsistencies in a claimant's testimony or daily activities permit an ALJ to conclude that some or all of the claimant's testimony about her limitations or symptoms is less than fully credible." *Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 164 (3d Cir. 2008); *see Muschko v. Comm'r of Soc. Sec.*, No. 20-2771, 2021 WL 3666638, at *3 (3d Cir. Aug. 18, 2021) (holding that ALJ's credibility determination was supported by substantial evidence where ALJ "noted [claimant's] subjective complaints but discounted them to the extent they were contradicted by . . . [claimant's]

representations [regarding his daily activities]"); *see also Hock*, 646 F. App'x at 174 ("In addition to relying on evidence that [Plaintiff] independently performed many activities of daily living, . . . the ALJ relied on the absence of evidence in the record to corroborate the more severe limitations to which [Plaintiff] testified.").[11]

Judge Lee then turned to the other record evidence and was unable to find support for the extent of the limitations that Teresa alleged. He considered Teresa's medical records in detail, starting with a nearly page-by-page account of her orthopedic medical records from 2022 and 2023, which included her diagnostic imaging results and history of treatments, procedures, and surgeries. (AR at 22–23 (citing AR at 362–449).) He further reviewed Teresa's physical therapy records, consultative examination, and "[m]ore recent" orthopedic records and imaging results.

[11] Although Teresa argues that Judge Lee failed to explain his reasoning, she acknowledges that he "claimed support . . . in Plaintiff's purportedly inconsistent daily activities." (Pl. Br. at 13.) She asserts, however, that Judge Lee "did not identify them (and to the extent he did he was plainly discussing the *mental* requirements of her activities)" and that "there is no obvious basis in her activities, which she described as done sporadically, and often with assistance from others, for finding any inconsistency." (*Id.*) Not so.

Judge Lee identified that Teresa reported being able to prepare simple meals, drive, shop in stores, and load and unload the dishwasher, and in so doing he was plainly evaluating Teresa's physical limitations. (AR at 22 (citing AR at 313–20).) Teresa's own statements do not suggest these activities are "sporadic," and while Teresa might have preferred greater detail about the assistance for certain activities she says she receives, Judge Lee did not overstate or mischaracterize Teresa's reported activities, nor did he say she could do them independently. (*See id.* at 314 (in response to the question "[d]escribe what you do from the time you wake up until going to bed" under the heading "information about daily activities," writing, "prepare whatever meal I can, perform light tasks/chores around the house"), 315–16 (stating she "daily" prepares "basic light snacks," but "need[s] assistance cutting food, opening cans and lifting cooking equipment"; "place[s] dishes in dishwasher" twice a week when dishes are "brought to [her]"; is able to "go out alone" as well as drive; and goes shopping twice a week with family assistance)); *Miller v. Comm'r of Soc. Sec.*, No. 20-3642, 2021 WL 3137439, at *3 (3d Cir. July 26, 2021) ("While we have recognized that 'sporadic or transitory activity does not disprove disability' . . . [Plaintiff's] activities here are not 'sporadic,' but rather are appropriately indicative of how her pain affects her daily activities and ability to work.").

Judge Lee also did not base his credibility determination on these activities alone. He properly considered Teresa's activities alongside the other record evidence as one of several factors relevant to his decision, which was not in error. *See* 20 C.F.R. § 404.1529(c)(3)(i) (providing that the ALJ will consider daily activities in evaluating claimed symptoms); *Cunningham v. Comm'r of Soc. Sec.*, 507 F. App'x 111, 118 (3d Cir. 2012) ("[I]t is appropriate for an ALJ to consider the number and type of activities in which a claimant engages when assessing his or her residual functional capacity."); *Hock*, 646 F. App'x at 174 (finding that, notwithstanding contrary record evidence, ALJ did not "reject evidence for no reason or for the wrong reason" where plaintiff's daily activities were inconsistent with alleged symptoms).

(*Id.* at 23 (citing AR at 450–54, 581–699, 754, 770, 794).) Judge Lee acknowledged, for example, that Teresa "complained of pain in the cervical and right upper extremity" to her orthopedist, exhibited "reduced range of motion . . . [and] pain upon range of motion in the cervical spine" during physical examinations, received MRIs and X-rays that showed "mild disc bulges" and "mild degenerative arthritis" in her cervical spine and "mild osteoarthritis" in her right hand, and underwent a cervical fusion surgery in July 2022 and epidural injection in January 2023. (*Id.* at 23–24.) Judge Lee noted, however, that imaging also showed "no significant adjacent segment disc degeneration or instability," that Teresa declined a second epidural injection and reported that Gabapentin "did help," that her physical examination in February 2023 was "generally unchanged" from her examination in February 2022, and that, at both examinations, Teresa had a normal gait, normal heel and toe walk, and her muscle testing was "generally 5/5 with the exception of 1/4 or 2/4 in the biceps, triceps and brachioradialis reflex." (*Id.* at 23.) Judge Lee found it "noteworthy" that Teresa similarly exhibited "normal gait, posture and motor behavior" during her July 2023 consultative examination. (*Id.*) With respect to Teresa's physical therapy records, Judge Lee observed that Teresa "complained of pain rang[ing] from 2 to 10 out of 10" and "reported some improvement, but also noted that when she tried cleaning for a prolonged period of time she was in pain." (*Id.*)[12]

---

[12] In passing, Teresa faults Judge Lee for "highly selective references to the record." (Pl. Br. at 12, 14.) She neither elaborates on this contention nor points to any overlooked record evidence. (*See id.* at 10–14.) The Court does not find Judge Lee's discussion of the record selective for the reasons explained herein. In fact, although not immediately obvious from his succinct explanations, Judge Lee appears to review almost every orthopedist appointment record—her February 2022 appointment, (*id.* at 23 (referencing AR at 372–74)), March and April 2022 appointments and testing, (*id.* (referencing AR at 377, 379, 382)), July 2022 surgery and post-surgical imaging, (*id.* (referencing AR at 386–88, 390, 395)), October 2022 appointment, (*id.* (referencing AR at 398)), November 2022 appointment, (*id.* (referencing AR at 402–05)), January 2023 epidural injection procedure, (*id.* (referencing AR at 433–34)), and February 2023 appointment, (*id.* (referencing AR at 423–25)). The administrative record otherwise includes Teresa's physical therapy records, 2024 imaging results, and consultative examination, all of which Judge Lee discussed, (*id.* (citing AR at 581–699, 754, 770, 794)), as well as older records not at issue, *see supra* note 5.

Judge Lee also considered and found persuasive the PAMFs in the record, and his analysis thereof is instructive. (AR at 23 (citing AR at 50–64)). Judge Lee explained which opinions he found consistent with the other medical evidence, namely the state agency medical consultants' observations of "cervical injections, positive Spurling on right and right C5/6 sensory dysfunction, but normal gait, heel/toe walk, normal reflexes and 5/5 motor strength." (*Id.*) Similarly, Judge Lee explained that the medical consultants "noted that [Teresa] is independent in self-care, shares in cooking, comanaged finances, shops and drives," which he found consistent with Teresa's reported activities of daily living. (*Id.*) He accordingly found both PAMFs persuasive and agreed, as part of his RFC determination, that Teresa is limited to "light" work. (*Id.* at 22–23.) The explanations of what Judge Lee found consistent between the PAMFs and record evidence underscore and align with the inconsistencies he observed between Teresa's subjective statements and the record. Judge Lee did not consider any other medical opinions pursuant to 20 C.F.R. § 404.1520c, as none are found in the record. *See Mercado v. Kijakazi*, 629 F. Supp. 3d 260, 277 (M.D. Pa. 2022) ("[W]hen no medical opinion supports a disability finding[,] . . . courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence.").

Although Teresa may disagree with Judge Lee's conclusions, they are nonetheless supported by substantial evidence. Judge Lee "clearly examined the medical records to look for corroboration of Plaintiff's self-reports, but found the medical evidence of record insufficient[] . . . . Despite Plaintiff's objections, this was an entirely appropriate exercise of the ALJ's discretion." *K.A.*, 2026 WL 2428223, at *2. "With [Teresa's] contradictory testimony and the lack of significant medical evidence or a medical opinion fully supporting [her] subjective assessment of [her] limitations or complaints of pain, [this Court] cannot say that substantial

evidence did not support the ALJ's ruling or his rejection of parts of [Teresa's] testimony as not fully credible." *Burns v. Barnhart*, 312 F.3d 113, 130 (3d Cir. 2002) (citation omitted).

Teresa counters that "subjective symptoms alone can support work-preclusive limitations," but that is mistaken. (Pl. Br. at 8 (emphasis omitted).) The applicable regulations are clear that a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled," and the ALJ must determine whether such statements are "consistent with the objective medical evidence and other evidence."[13] 20 C.F.R. § 404.1529(a), (c)(3); *see Vanessa T-H. v. Comm'r of Soc. Sec.*, No. 23-2293, 2024 WL 1635685, at *6 (D.N.J. Apr. 16, 2024) ("Plaintiff's own testimony does not persuade the Court to conclude that the ALJ failed to consider her radiculopathy diagnosis or lower back disc disease in assessing her RFC. . . . On their own, . . . Plaintiff's statements cannot establish the existence or severity of an impairment."); *Cosme*, 845 F. App'x at 133; *Dixon*, 183 F. App'x at 252; SSR 16-3p, 2017 WL 5180304, at *2. In turn, an ALJ "quite properly discount[s] subjective complaints that [a]re not otherwise supported by the record." *Sponheimer v. Comm'r of Soc. Sec.*, 734 F. App'x 805, 808 (3d Cir. 2018) (citing *Schaudeck*, 181 F.3d at 433); *see Scott R. v. Kijakazi*, 643 F. Supp. 3d 483, 495 (D.N.J. 2022) ("Although ALJs must consider claimants' subjective complaints, they are not

[13] Teresa appears to conflate "objective medical evidence" and "other evidence." She is correct about the role of objective medical evidence, i.e., "the medical signs and laboratory findings of record," in the ALJ's evaluation of reported symptoms. SSR 16-3p, 2017 WL 5180304, at *5. As explained *supra*, the ALJ first asks whether objective medical evidence establishes the existence of a medically determinable impairment that could reasonably cause the reported symptoms, then considers "all of the available evidence" to determine the limiting effects of those reported symptoms. 20 C.F.R. § 404.1529(a); (*see* Pl. Br. at 8–9). In other words, at the second step, a claimant's self-reported symptoms and limitations need not be confirmed by objective medical evidence. *See, e.g.*, SSR 16-3p, 2017 WL 5180304, at *5 ("Symptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques."). Contrary to Teresa's assertions, however, that does not mean that a claimant's subjective statements alone can establish her limitations. The record must still contain other evidence that is consistent with the claimant's statements. *See id.* at *6; *Edwin J. v. Comm'r of Soc. Sec.*, No. 24-9362, 2025 WL 2506278, at *9 (D.N.J. Sept. 2, 2025) ("[A claimant's] statements about symptoms 'will not alone establish' disability, but might, in conjunction with other medical evidence, lead to a finding of disability." (quoting 20 C.F.R. § 416.929(a))); 20 C.F.R. § 404.1513(a).

obligated to credit them. Claimants bear 'the burden of producing medical evidence to support those complaints.' ALJs remain 'free to 'discount' lay witness testimony but must explain the reasons for doing so.'" (citations omitted)); *Rock v. Comm'r of Soc. Sec.*, No. 19-22237, 2021 WL 2177512, at *5 (D.N.J. May 28, 2021) (citing 20 C.F.R. § 404.1529(a)); *K.A.*, 2026 WL 2428223, at *2.

Teresa also does not contend that Judge Lee improperly rejected any record evidence that supports her subjective statements. *See Bryant v. Comm'r of Soc. Sec.*, No. 19-17311, 2021 WL 1748134, at *8 (D.N.J. May 3, 2021) ("[C]ontrary to Plaintiff's arguments, the ALJ sufficiently explained why objective evidence belies Plaintiff's subjective complaints . . . . Plaintiff has failed to meet her burden in pointing to evidence that was overlooked by the ALJ that would change the outcome of his decision, and thus, the ALJ's RFC determination remains undisturbed."); *Burns*, 312 F.3d at 129 ("Importantly, [Plaintiff] does not point to any relevant medical opinion that supports his allegations that his pain and exertional limitations are more severe than the ALJ found them to be. Instead, he notes only his testimony before the ALJ. . . . [T]he ALJ noted that other parts of [Plaintiff's] testimony, namely those addressing the number and type of activities he engages in on a daily basis, seemed to belie his assertion that the pain is disabling."). Nor does the record contain any medical opinion limiting Teresa to the extent she alleges. *See, e.g.*, *Hayes v. Astrue*, No. 08-2111, 2009 WL 1307237, at *7 (D.N.J. May 6, 2009) (concluding that RFC determination was supported by substantial evidence where ALJ reasoned that "[t]here are no medical opinions in the record limiting the claimant's exertional functional capacity lower than [the ALJ's RFC]" and "[n]o doctor has ever stated or suggested that the claimant was disabled or totally incapacitated"); *Blumenstein v. Berryhill*, No. 16-2492, 2017 WL 7790206, at *7–8 (M.D. Pa. Nov. 15, 2017) (disagreeing that ALJ failed to properly consider subjective complaints,

explaining that "the ALJ faced a particularly challenging task" because the plaintiff provided "no medical opinion evidence . . . supporting her disability claim" and the record "was devoid of . . . clinical proof which would allow for a determination that [Plaintiff's] medical conditions met the stringent standard of disability under the Act," and concluding that ALJ properly exercised discretion in finding "that [Plaintiff] could perform a range of light work . . . based upon the limited evidence presented"), *report and recommendation adopted*, 2018 WL 1035765 (M.D. Pa. Feb. 23, 2018). The only opinions are contained in the PAMFs, which Judge Lee found were not consistent with the extent and degree of limitation alleged by Teresa. (*See* AR at 22–24); *see also* 20 C.F.R. § 404.1513a(b)(1) (providing that ALJs "must consider [PAMFs] . . . because [the Administration's] Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation"); SSR 17-2p, 2017 WL 3928306, at *3 (Mar. 27, 2017) (same).

At most, Teresa points generally to medical evidence of the existence of her impairments, asserting, without elaboration or citation, that "[c]ertainly no obvious inconsistencies exist in the multiple positive Spurling's tests, or EMG of the upper extremities that revealed right C6 radiculopathy." (Pl. Br. at 12.) However, she does not explain how such imaging and test results support her claims about the limiting effects of her symptoms, and she recognizes that Judge Lee considered such evidence. (*See id.*; AR at 23); *see also Iacouzzi*, 2021 WL 5121246, at *2 (explaining that plaintiff "d[id] not undercut the judge's credibility finding" by pointing to diagnostic tests and imaging results and finding that ALJ's credibility determination was substantially supported). Nor would such evidence itself warrant remand, even if it were overlooked by Judge Lee, given that substantial evidence supports his conclusions. *See Diego H. v. Bisignano*, No. 23-3870, 2025 WL 2058144, at *6 (D.N.J. July 23, 2025) ("Notably, even if

Plaintiff points to evidence that he believes undermines the ALJ's evaluation, so long as the ALJ satisfies the substantial evidence standard, the Court will uphold the ALJ's decision even if contrary evidence exists that could justify the opposite conclusion." (citing *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012))).

Teresa's nonspecific and underdeveloped arguments regarding the record and Judge Lee's reasoning are seemingly explained by the fact that, at bottom, Teresa believes that Judge Lee's credibility determination is opaque. (Pl. Br. at 10–14.) She argues that Judge Lee's analysis is only a "summary of the evidence" (which she "concedes for the sake of argument . . . is generally accurate") and a "statement of a conclusion" without an explanation for why he found her subjective statements inconsistent with the record evidence. (*Id.* at 4, 11 (emphasis omitted).) However, as evidenced by the foregoing, Judge Lee's reasoning and conclusions are adequately explained. The ALJ's so-called "burden of articulation" is not an onerous one; he need only "provide a 'discussion of the evidence' and an 'explanation of reasoning' for his conclusion sufficient to enable meaningful judicial review." *Mercado*, 629 F. Supp. 3d at 275 (quoting *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009)); *see Jones*, 364 F.3d at 505 (explaining that ALJs need not "use particular language or adhere to a particular format in conducting his analysis" (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000))); *Garland v. Ming Dai*, 593 U.S. 357, 369 (2021) ("[A] reviewing court must 'uphold' even 'a decision of less than ideal clarity if the agency's path may reasonably be discerned.'"). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981); *see Rachel B. v. Kijakazi*, No. 20-12717, 2022 WL 1156697, at *6 (D.N.J. Apr. 19, 2022) ("Although the ALJ perhaps could have been more precise about which evidence he was rejecting, we do not

expect the ALJ to make reference to every relevant treatment note . . . . The ALJ 'must consider and evaluate the medical evidence in the record' at a level which allows a reviewing court to properly determine if the decision is supported by substantial evidence under 42 U.S.C. § 405(g). The ALJ has done so here, and his decision is supported by substantial evidence."); *Natalie E.D. v. Bisignano*, No. 24-5323, 2025 WL 1534966, at *6 (E.D. Pa. May 29, 2025) ("It is apparent to this court that the ALJ found that, despite the fact that Plaintiff's subjective symptom testimony was consistent with the statements of her parents and former job coach, he thought those statements contradicted the balance of the record and, for that reason, reached his RFC assessment. The ALJ's decision is capable of judicial review, hence, there is no basis to find error, despite his failure to write a better-articulated decision."); *Maria B. v. Bisignano*, No. 24-1206, 2026 WL 1707596, at *10 (D.N.J. June 12, 2026); *Sulenny P. v. Comm'r of Soc. Sec.*, No. 21-12436, 2026 WL 2427341, at *13 (D.N.J. Aug. 19, 2026).

Because the Court can reasonably discern why Judge Lee found Teresa's subjective statements inconsistent with the record evidence, *see Garland*, 593 U.S. at 369, and his credibility determination and RFC assessment are supported by substantial evidence, *see supra*, the Commissioner's decision is **AFFIRMED**.

## CONCLUSION

Having reviewed the record as a whole, the Commissioner's decision is **AFFIRMED**. An appropriate Order follows.

ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE

Dated: October 19, 2026